IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 17, 2015 Session

## STATE OF TENNESSEE v. ETHAN ALEXANDER SELF

**Appeal from the Criminal Court for Hawkins County**
**No. 13CR154    Jon Kerry Blackwood, Senior Judge**

———————————————

**No. E2014-02466-CCA-R3-CD – Filed August 29, 2016**

———————————————

**ROBERT H. MONTGOMERY, JR., J., concurring in part and dissenting in part.**

I dissent from the majority's conclusion that the trial court did not err in denying the Defendant's motion for a mistrial after Dr. Brietstein testified that, in his opinion, the shooting was not accidental. As the majority notes, this testimony was elicited by the prosecutor in violation of the court's earlier ruling which prohibited Dr. Brietstein from testifying to any opinion that the shooting was accidental or intentional.

The majority notes that on direct examination by the defense, Dr. Brietstein read an excerpt of his report to the jury. The excerpt included his opinion that the Defendant's account of domestic abuse by the victim was believable, notwithstanding a lack of supporting evidence aside from the Defendant's account. This excerpt also contained the following:

> By his account, the level of abuse escalated prior to the shooting of his father, as was Ethan's desire to stand up to his father, emancipate himself, and finally show his father, "Who the bigger man was." Thus, Ethan, being a victim of abuse, felt as if he had had enough, took matters into his own hands and decided to confront his father with the gun, the outcome being all but inevitable.

When cross-examining Dr. Brietstein, the prosecutor asked what the doctor meant when he said in the report that the outcome was all but inevitable. Dr. Brietstein responded, "Well, what I mean is what I go on to say and explain is that I do not believe this to have been an accident." It was at this point that defense counsel moved for a mistrial.

The prosecutor's explanation for having asked the question indicates his disregard of the trial court's unequivocal order excluding evidence of an expert's opinion as to whether or not the expert believed the shooting had been accidental. Although the prosecutor claimed he did not know the exact answer the Dr. Brietstein would give, he conceded that he knew the witness believed the shooting was not accidental.

The majority aptly notes that three non-exclusive factors may be pertinent to determining whether a mistrial should be granted: "(1) whether the improper testimony resulted from questioning by the state, rather than having been a gratuitous declaration, (2) the relative strength or weakness of the state's proof, and (3) whether the trial court promptly gave a curative instruction." *State v. Demitrius Holmes*, No. E2000-02263-CCA-R3-CD, 2001 WL 1538517, at *4 (Tenn. Crim. App. Nov. 30, 2001); *see also State v. Danny Wayne Horn*, No. E2015-00715-CCA-R3-CD, 2016 WL 561181, at *7 (Tenn. Crim. App. Feb. 12, 2016); *State v. Bennie Nelson Thomas, Jr.*, No. W2004-00498-CCA-R3-CD, at *5 (Tenn. Crim. App. Nov. 1, 2004), *perm. app. denied* (Tenn. Feb. 28, 2005); *State v. Paul Hayes*, No. W2001-02637-CCA-R3-CD, at *4 (Tenn. Crim. App. Dec. 6, 2002), *perm. app. denied* (Tenn. May 27, 2003). Upon consideration of these factors, I reach a different result than that reached by the majority.

As the majority acknowledges, Dr. Brietstein's testimony was elicited by the State. The majority likewise acknowledges that the State's action was particularly egregious in view of the prosecutor's knowledge of the answer he was likely to receive and of the court's prior ruling excluding evidence of this nature.

The majority aptly notes, as well, that the evidence was legally sufficient to support the first degree premeditated murder conviction. I acknowledge that, by all accounts, the Defendant shot the victim. The question of the Defendant's state of mind when he shot the victim was vigorously litigated at the trial and was the subject of substantial conflicting proof offered by the parties. In my view, the improperly elicited evidence went to the issue upon which the entire case turned – the Defendant's state of mind when he shot the victim. There could be no assurance, after the jury heard this expert testimony that was contrary to the defense theory of an accidental shooting and which came from a witness called by the defense, that the jury could, and did, disregard it, notwithstanding the court's instruction to disregard the improper testimony.

In drawing a contrary conclusion, the majority notes Dr. Kelley's testimony that the Defendant suffered from PTSD, that PTSD from abuse would lead to an exaggerated startle response, that the Defendant's account of the gun going off after he was startled had a "ring of genuineness," and that Dr. Kelley thought the Defendant had been truthful with him. The majority states that this evidence was received notwithstanding the trial

court's prior ruling that the experts could not testify on the ultimate issue of whether the Defendant intentionally or accidentally shot the victim. The import of Dr. Kelley's testimony was that, in his opinion, the Defendant suffered from post-traumatic stress disorder (PTSD) and that the Defendant's account of the shooting was consistent with the symptoms and manifestations of PTSD. Dr. Kelley's testimony about whether he thought the Defendant was truthful pertained specifically to the Defendant's account of abuse at the hands of the victim and whether Dr. Kelley thought the Defendant was malingering, both of which were relevant to Dr. Kelley's PTSD diagnosis. Similarly, Dr. Kelley merely testified that the Defendant's account of being startled and the gun going off had a "ring of genuineness" based upon Dr. Kelley's experience in talking with PTSD patients. Unlike the majority, I do not view Dr. Kelley's testimony as having gone beyond the scope of the court's original ruling and as having provided the jury with an expert view directly opposing Dr. Brietstein's opinion about the ultimate issue in the case.

I have considered the case cited by the majority and the State, *State v. Kathy Martin and Marcus Carlos West*, No. 03C01-9411-CR-00420, 1996 WL 192902, at *5-6 (Tenn. Crim. App. Apr. 23, 1996), *perm. app. denied* (Tenn. Nov. 4, 1996), and conclude that it is distinguishable. As the majority notes, *Kathy Martin* involved an aggravated child abuse prosecution related to a thirteen-month-old child's burns from a butane lighter. On cross-examination by the defense, one of the doctors testified that, in his opinion, that victim's the injuries were intentionally caused. His response was not responsive to the question asked, which pertained to a thirteen-month-old child's ability to self-inflict the burns. One of the defendants made a motion for a mistrial but did not request a curative instruction, and none was given. The trial court denied the motion, and this court agreed with the trial court's ruling. In *Kathy Martin*, the question was whether either or both of the defendants caused the victim's injuries, whereas in the present case, the Defendant admitted causing the victim's fatal injury. The only issue to be decided in the present case was whether the Defendant possessed the requisite mental state for first degree premeditated murder or whether his actions were a lesser offense or no offense at all. In *Kathy Martin*, the testimony that the injuries were intentionally inflicted, though improper, did not pertain to the challenging defendant's state of mind as much as it pertained to whether a thirteen-month-old child was physically capable of burning herself with a lighter. Viewed in this light, the improper evidence in *Kathy Martin* did not create a manifest necessity for a mistrial, unlike the improper evidence in the present case.

In my view, the State's eliciting the inadmissible evidence was a flagrant violation of the trial court's previous order, and the evidence the jury heard as a result – from a psychiatric expert called by the Defendant himself – was so devastating to the defense that "no feasible alternative to halting the proceedings" existed. *See State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). Accordingly, I would hold that the trial court abused its

discretion in denying the Defendant's motion for a mistrial. *See State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990).

Because I believe manifest necessity for a mistrial existed, I would reverse the conviction and remand the case for a new trial. In all other respects, I concur with the majority's analysis.

_____
ROBERT H. MONTGOMERY, JR., JUDGE